





BJR

3:00-CV-1992 ALOHA SURFBOARDS PTY V. M GIL SHAPES

*1*

*CMP*

1   **LAW OFFICES OF SAMUEL P. BRITTON**
    Samuel P. Britton,  (SBN: 195311)
2   3868 Carson Street, Suite 201
    Torrance, California 90503
3   (310) 316-0162
4   (310) 316-0192  (Facsimile)

5   Attorney for Plaintiff
6   ALOHA SURFBOARDS PTY LTD.

7

FILED

- 5 2000

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                           DEPUTY

8

9                     **UNITED STATES DISTRICT COURT**

10                   **SOUTHERN DISTRICT OF CALIFORNIA**

11                                                        '00 CV   1992 IEG  (JAH)

12   ALOHA SURFBOARDS PTY LTD.,          )    Case No.:
13   an Australian Corporation,          )
                                         )    COMPLAINT FOR FEDERAL
14            Plaintiff,                 )    TRADEMARK INFRINGEMENT,
                                         )    FEDERAL UNFAIR COMPETITION,
15                                       )    COMMON LAW AND CALIFORNIA
         vs.                             )    UNFAIR COMPETITION, FEDERAL
16                                       )    AND CALIFORNIA ANTI-DILUTION
                                         )    VIOLATION
17   M GIL SHAPES                        )
18   an unknown entity,                  )
     and Mauricio B. Gil,               )
19   an Individual                       )
     DOES 1 through 43, inclusive        )
20                                       )
              Defendants.                )
21   _____ )

22

23        Plaintiff Aloha Surfboards Pty. Ltd., ("Aloha Surfboards Australia") complains and

24   alleges against defendants M Gil Shapes and Mr. Mauricio B. Gil ("Defendants")

25                                   **PARTIES**

26   1.  Aloha Surfboards Australia is a corporation duly organized and existing under the laws

27      of Australia, with its principal place of business in  8/111 Old Pittwater Rd. Brookvale,

28                                          1

NSW 2100. Aloha Surfboards Australia is duly authorized to do and is doing business in Australia.

2. Defendant M Gil Shapes is, and at all times material hereto was, a fictitious business name for Mr. Mauricio B. Gil whose principal place of business is located at 420 Via Del Monte, Oceanside, California. Plaintiff is ignorant of the true names and capacities of Defendants sued herein and DOES 1-41, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiff will amend the complaint to allege their true names and capacities when ascertained.

3. Aloha Surfboards Australia is informed and believes, and thereon alleges, that at all times material hereto, defendant Mr. Mauricio B. Gil is and was a resident of the State of California and owner of M Gil Shapes and that at all times herein mentioned, each of the Defendants was the agent and employee of each of the remaining Defendants, and in doing the things hereinafter alleged, was acting within the course and scope of such agency and employment.

**JURISDICTION AND VENUE**

4. This is a civil action for trademark infringement, unfair competition, trademark dilution, injury to business reputation, and deceptive trade practices arising under the common law, the statutes of the State of California and the Federal Trademark Act of 1946, 60 Stat. 427, 15 U.S.C. § 1051 *et seq.* The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000, arises under the laws of the United States, and is between citizens of different states or of a state and a foreign state. More specifically, Aloha Surfboards Australia is a citizen of Australia; M Gil Shapes and Mr. Mauricio B. Gil are citizens of California.

5. This Court has subject matter jurisdiction over this action pursuant to § 39 of the Trademark Act of 1946, 15 U.S.C. § 1121 and the Judicial Code, 28 U.S.C. §§ 1331, 1332 and 1338. Venue is proper in this District under 28 U.S.C. § 1391, in that the claim

2

Complaint of Aloha Surfboards Pty Ltd. v. M Gil Shapes

at issue arose here, and Defendants reside here for purposes of venue because they are doing business here.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

6. Plaintiff has been and now is extensively engaged in the business of manufacturing and marketing in interstate commerce a wide variety of surfboards and other surf-related products, and since 1991 has marketed surfboards under the trademark ALOHA worldwide. Said surfboards have been widely advertised and extensively offered under this mark throughout the United States, Australia, Japan and Europe and the trademark ALOHA has become, through widespread and favorable public acceptance and recognition, an asset of substantial value as a symbol of Plaintiff, its quality products and its good will.

7. Sometime in 1997, Mr. Greg Clough, Managing Director of Aloha Surfboards Australia, ("Mr. Clough") introduced Mr. Toshihide Nakajima, ("Mr. Nakajima") a business acquaintance, to Defendants. Over time and after several discussions between Mr. Nakajima and Defendants, it was Mr. Clough's understanding that Mr. Nakajima was intending to associate together with Defendants in forming some type of business entity or joint venture. Based on that understanding, Mr. Clough intended to transact business with Mr. Nakajima and Defendants.

8. On or about 6 November 1997 in accordance with Mr. Clough's understanding, Mr. Nakajima and Defendants attempted to form a limited liability company and a Certificate of Formation was executed for this purpose pursuant to the Delaware Limited Liability Company Act, 6 Del. C. Sec. 18-101 *et seq.* attached herewith as "Exhibit 1." The name of the supposed limited liability company was Proud Mary LLC.

9. On or about 23 March 1998, Proud Mary LLC registered the name "Aloha Surfboards" as a fictitious business name in California and the use of this fictitious name was abandoned by Proud Mary LLC on 29 March 2000 and Defendants have since filed to

3

---

Complaint of Aloha Surfboards Pty Ltd. v. M Gil Shapes

use "Aloha Surfboards" as a fictitious business name and are using same attached herewith as "Exhibit 2."

10. Aloha Surfboards Australia is informed and believes and on that basis alleges that Mr. Clough was not initially aware at this time that the limited liability company was never properly formed or that Defendant Mauricio B. Gil may not have actually been a member for reasons including: (1) lack of Defendant's capital contribution representing a 35% interest; (2) No execution of a written operating agreement; (3) No election of a Board of Managers in accordance with the Certificate of Formation; (4) No holding of Meetings; (5) Various breaches by the Defendant against the entity and Mr. Nakajima including breach of fiduciary duties, and self-dealing; (6) various disagreements between Mr. Nakajima and Defendant Mauricio B. Gil; and Mr. Nakajima's later desire to disassociate himself from Defendants as a business entity or partnership.

11. While Mr. Clough was under the mistaken impression that Mr. Nakajima and Defendant Mauricio B Gil's limited liability company was properly formed, Mr. Clough drafted a letter addressed to Proud Mary LLC stating that Proud Mary LLC was the holder of a license to distribute clothing in the United States for Plaintiff attached herewith as "Exhibit 3."

12. Aloha Surfboards Australia is informed and believes and on that basis alleges that it was understood that Mr. Nakajima, whose area of expertise is clothing would be granted a license to use the "Aloha" name on clothing through Proud Mary LLC and it was further understood that if a deal was to be reached to license out the "Aloha" name for the manufacture and sale of surfboards in the U.S., then this would involve separate negotiation to reach a separate deal set forth in writing and properly signed by the parties involved and if such an agreement were made, it would most likely be negotiated with Defendants whose area of expertise was the shaping of surfboards.

13. Aloha Surfboards Australia is informed and believes and on that basis alleges that it did on several occasions distribute surfboard blanks to Proud Mary LLC for final shaping by

4

Defendant Mr. Mauricio B. Gil and sale by Proud Mary LLC in exchange for a percentage payment on each board sold, but in no way were such actions intended to constitute an exclusive licensing agreement with a set term period, but rather were intended to be independent sales transactions conducted on a case by case or trial basis.

14.  Aloha Surfboards Australia is informed and believes and on that basis alleges that at no time was a deal ever reached to grant an exclusive license for use of the "Aloha" trademark to Proud Mary LLC or to Defendants directly for the manufacture, sale or distribution of surfboards and there is no written and properly executed licensing contract as evidence of any such deal ever existing.

15.  Aloha Surfboards Australia is informed and believes and on that basis alleges that by August of 1999 Mr. Nakajima and Defendants developed irreconcilable differences and decided to disassociate from each other as a business entity whether it be a limited liability company or a partnership.  Mr. Nakajima notified Defendants on numerous occasions that he did not want Defendants to be a part of Proud Mary LLC anymore and that if Defendants wish to make surfboards bearing the "Aloha" trademark, then they should strike a deal directly with Mr. Clough to do same.

16.  Aloha Surfboards Australia is informed and believes and on that basis alleges that on or about 23 August 1999, Defendant's attorney submitted a draft proposal agreement to transfer Mr. Mauricio B. Gil's interest in Proud Mary LLC to Mr. Nakajima in exchange for among other consideration the assignment of all rights to Defendant that Proud Mary LLC and Mr. Nakajima have to use the "Aloha" name for the manufacture and sale of surfboards and the use of Aloha surfboard designs as presently manufactured and sold by Proud Mary LLC attached herewith as "Exhibit 4."

17.  Aloha Surfboards Australia is informed and believes and on that basis alleges that on or about 25 August 1999 counsel for Mr. Nakajima responded to Defendant's draft proposal by rejecting same stating that Mr. Nakajima desired: (1) that Proud Mary LLC should be liquidated,  (2) that funds removed by owners be returned, (3) that Proud Mary

5

LLC should not conduct any further business, **(4)** that Defendant and his wife were using property (surfboards) belonging to Proud Mary LLC to start up their own business, Defendant M Gil Shapes, without compensating Proud Mary LLC and (5) Proud Mary LLC has no right to license or sub-license the manufacture and sale of surfboards using the "Aloha" name to Defendants, attached herewith as "Exhibit 5."

18. Aloha Surfboards Australia is informed and believes and on that basis alleges that Defendant Mr. Mauricio B. Gil as the Operating Manager of Proud Mary LLC never *made any percentage payments to Aloha Surfboards Australia on behalf of Proud Mary* LLC except on one occasion constituting a late payment of $1,200 dated 19 November 1999 which was made after Defendant was no longer associated with Proud Mary LLC attached herewith as "Exhibit 6."

19. Aloha Surfboards Australia is informed and believes and on that basis alleges that on or about 1 September 1999, Mr. Nakajima assigned all of his right, title and interest in Proud Mary LLC to a newly-formed corporation, Proud Mary Corporation ("PMC"), in exchange for 500,000 shares of PMC stock.

20. Aloha Surfboards Australia is informed and believes that on several occasions after Defendants were no longer associated with Mr. Nakajima that Plaintiff made several shipments of surfboard blanks to Defendants, but Plaintiff alleges that it was never timely compensated for such shipments and over time became deeply disappointed in Defendant's business practices and unauthorized acts.

21. Aloha Surfboards Australia is informed and believes and on that basis alleges that on 20 June 2000 a Cease and Desist letter dated 14 June 2000 was sent by facsimile to Defendants asking them to stop any further manufacture or sale of surfboards bearing the "Aloha" trademark, attached herewith as Exhibit 7.

22. Aloha Surfboards Australia is informed and believes and on that basis alleges that despite notifying Defendant's and their attorney in writing on two separate occasions including a second cease and desist letter dated 8 September 2000 sent to Defendants'

6

---

counsel by facsimile on 13 September 2000, attached herewith as Exhibit 8, to stop any further manufacture or sale of surfboards bearing the "Aloha" trademark. Defendants have been and are manufacturing and selling virtually duplicate reproductions of Plaintiff's surfboards bearing the "Aloha" trademark without authorization and are distributing same in commerce in the United States and are responsible for the export of same directly and indirectly to Japan and thus infringing on the distribution territory for Mr. Nakajima and his company. Accordingly, Defendants' manufacture, advertisement, sale and use of the surfboard reproductions bearing Plaintiff's "Aloha" trademark is likely to falsely identify and falsely represent the source of the product sold by Defendant as originating with Plaintiff.

23. Aloha Surfboards Australia is informed and believes and on that basis alleges that the use and sale by the Defendants of reproductions of surfboards bearing the "Aloha" trademark is intended to cause, has caused, and is likely to continue to cause mistake, to cause confusion in the minds of the purchasing public as to the source, origin or relationship of the respective products, and to deceive, all to Plaintiff's great damage.

## FIRST CLAIM FOR RELIEF

### (Federal Trademark Infringement)

24. Paragraphs 1 through 23 are repeated and incorporated herein by reference.

25. Over nine (9) years ago, the United States Patent and Trademark Office granted federal trademark registrations to Plaintiff for the trademark ALOHA in stylized and written format for Surfboards, T-Shirts, Sweatpants, Sweatshirts, Sweatjackets, Sweatshorts and assorted sporting goods including waveboards, snowboards, sport leashes, covers, bags and surfboard wax reflected as registration numbers 1580264, 1576581, 1635547, 1569907, 1635581, and 1576581 respectively. A true copy of said registrations is attached hereto and made a part hereof as Plaintiff's Exhibit 9. Said registrations are in

7

Complaint of Aloha Surfboards Pty Ltd. v. M Gil Shapes

full force and effect, are owned by Plaintiff, and have become incontestable under 15 U.S.C. § 1065.

26. Defendant's acts of infringement of Plaintiff's registered trademarks complained of hereinabove have been committed in the Southern District of California within the jurisdiction of this Court. Defendant has advertised its surfboards under the ALOHA trademarks in California, and has maintained a dealership in Oceanside, California, which is offering said products to the public. Said Defendants have sold or offered for sale in California and in interstate commerce surfboards and surf-related products under the trademark ALOHA without Plaintiff's authorization, thus creating likelihood of confusion, deception, and mistake. Defendants have thus engaged in the transaction of business and the commission of tortious acts in California.

27. Defendant's use in commerce of the designation ALOHA in the marketing of surfboards and surf-related products is an infringement of Plaintiff's registered trademarks ALOHA, in violation of 15 U.S.C. § 1114(l).

28. Plaintiffs have requested Defendants to cease and desist from its acts of trademark infringement and have given actual notice of same to Defendants on 20 June 2000 and 13 September 2000 respectively, but Defendants have refused to cease such acts.   Upon information and belief, by its said acts herein complained of, Defendants have made substantial profits to which it is not in equity or good conscience entitled.

29. Defendant's aforesaid conduct has caused and will continue to cause damage to the Plaintiff greatly in excess of $75,000 unless restrained by this Court, and said acts of infringement will cause further irreparable injury to Plaintiff if defendant is not restrained by this Court from further violation of Plaintiff's rights, and Plaintiff has no adequate remedy at law.

/

/

/

8

Complaint of Aloha Surfboards Pty Ltd. v. M Gil Shapes

## SECOND CLAIM FOR RELIEF

### (Federal Unfair Competition)

30. As its second ground for relief, Plaintiff repeats and realleges paragraphs 24 through 29 of Claim I herein.

31. Plaintiff's ALOHA trademarks have become uniquely associated with and hence identifies Plaintiff. Defendants' interstate use of the designation ALOHA without authorization is a use of a false designation of origin, or a false representation, wrongfully and falsely designates Defendants' products as originating from or connected with Plaintiff, and constitutes utilizing false descriptions or representations in interstate commerce.

32. Defendant's said acts are in violation of 15 U.S.C. § 1125(a).

## THIRD CLAIM FOR RELIEF

### (Common Law Unfair Competition and California Unfair Competition)

33. As its third ground for relief, Plaintiff repeats and realleges paragraphs 30 through 32 of Count II herein.

34. As a result of the association by the public of the "Aloha" mark with Aloha Surfboards Australia, Defendants' use and sale of deceptively similar surfboards bearing the "Aloha" name has or is likely to cause confusion, mistake and to deceive.

35. Plaintiff alleges upon information and belief, that Defendants' manufacture and sale of its surfboards bearing the "Aloha" mark were for the willful and calculated purpose of trading upon Plaintiff's good will and of selling its surfboards based upon the good will of Plaintiff's trademark and business reputation; further, defendant has willfully promoted and sold its surfboards in such a manner so as inevitably to suggest association, affiliation, or sponsorship with, or approval by, Plaintiffs' and so as to cause, or be likely to cause, confusion or mistake among purchasers as to origin of defendant's products, all to Defendants' gain and Plaintiff's damage.

9

Complaint of Aloha Surfboards Pty Ltd. v. M Gil Shapes

36. By virtue of Defendants' acts, hereinabove pleaded, Defendants have engaged in unfair competition with Plaintiff and the aforesaid conduct of Defendants therefore constitutes infringement of Plaintiff's common law rights in the said "Aloha" marks and improper and unfair competition with Plaintiff, all of which has damaged and will continue to damage Plaintiff's good will and reputation to the irreparable injury thereof unless restrained by this Court, and Plaintiff has no adequate remedy at law.

37. By virtue of Defendants' acts, hereinabove pleaded, Defendants have also violated the California Unfair Competition Act, California Business and Profession Code §§ 17200 et. seq.

38. Defendant's manufacture and sale of surfboards bearing the "Aloha" trademarks in the advertising, marketing and sale of its product, in the manner hereinabove alleged, constitutes deceptive trade practices within the meaning of California Business and Profession Code §§ 17200 et. seq., in that said use causes likelihood of confusion or of misunderstanding as to the source, sponsorship, or approval of Defendants' products, and causes likelihood of confusion or of misunderstanding as to affiliation, connection or association of Defendants with Plaintiff.

39. The public is likely to be substantially damaged as a result of the deceptive trade practices engaged in by Defendants, and unless enjoined by this Court under the provisions of the California Business and Profession Code §§ 17200 et. seq.. Defendants will continue said deceptive trade practices thereby deceiving the public and causing Plaintiffs immediate and irreparable damage for which they have no adequate remedy at law.

### FOURTH CLAIM FOR RELIEF
### (Federal and California Anti-Dilution Violation)

40. As its fourth ground for relief, Plaintiff repeats and realleges paragraphs 33 through 39 of Count III herein.

10

Complaint of Aloha Surfboards Pty Ltd. v. M Gil Shapes

41. Defendants' acts, hereinabove pleaded, have caused and there exists a likelihood of injury to Plaintiff's business reputation and of dilution of the distinctive quality of Plaintiff's mark and forms of advertisement in violation of 15 U.S.C. § 1125(c) and California Business and Profession Code Annotated §§ 14320-14342, unless enjoined by this Court, and Plaintiffs have no adequate remedy at law.

WHEREFORE, plaintiff prays for judgment:

1. That Defendants, its officers, agents, servants, employees, and attorneys and all those persons in active concert or participation with it be forthwith preliminary and thereafter permanently enjoined and restrained from:

   a. Using the trademarks ALOHA or any confusingly similar designation alone or in combination with other words, as a trademark, trade name component or otherwise, to market, advertise or identify Defendants' business and their surfboards and other surfing-related products;

   b. Otherwise infringing Plaintiff's mark;

   c. Unfairly competing with Plaintiff in any manner whatsoever; and

   d. Causing likelihood of confusion, injury to business reputation, or dilution of the distinctiveness of Plaintiff's symbols, labels, or forms of advertisement.

2. That Defendants be directed to file with this Court and serve on Plaintiff within thirty days after the service of an injunction, a report in writing under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction.

3. That Defendants be required to deliver up and destroy all devices, literature, advertising and other material bearing the infringing designation.

4. That Plaintiff be awarded Defendants' trademark infringement profits after an accounting.

5. That Plaintiff have and recover costs in this suit.

6. That Plaintiff have such other and further relief as the Court may deem just and proper.

/

11

Complaint of Aloha Surfboards Pty Ltd. v. M Gil Shapes

1

2   DATED:   September 19, 2000        LAW OFFICES OF SAMUEL P. BRITTON
                                       SAMUEL P. BRITTON
3

4                                      By: _____

5                                          Samuel P. Britton

6                                      Attorney for Plaintiff
                                       ALOHA SURFBOARDS PTY., LTD.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12

Complaint of Aloha Surfboards Pty Ltd. v. M Gil Shapes

# TABLE OF CONTENTS

## EXHIBITS

Exhibit 1            Proud Mary LLC Formation Documentation

Exhibit 2            Fictitious Business Name Information

Exhibit 3            Letter from Mr. Greg Clough

Exhibit 4            Draft Agreement to transfer interest in Proud Mary LLC

Exhibit 5            Letter from PMC's Attorney, Mr. Gene Walsh

Exhibit 6            Bank of America Wire Transfer Receipt

Exhibit 7            First Cease and Desist Letter dated 14 June 2000

Exhibit 8            Second Cease and Desist Letter dated 8 September 2000

Exhibit 9            Trademark Registration numbers

RECORD BOOK

AND

MEMBERSHIP DIRECTORY OF

PROUD MARY, LLC

---

A LIMITED LIABILITY COMPANY

UNDER THE LAWS OF

THE STATE OF

DELAWARE

*We're known by the companies we start!!!*

**The Incorporators Ltd.**
(800) 223-3928

# IMPORTANT NOTICE

*Inasmuch as the statutory provisions relating to the materials herein contained differ from jurisdiction to jurisdiction, and are subject to change without notice, it is recommended that Counsel consult the applicable statute prior to drafting.*

This Corporate Records Book contains forms of both incorporator's and directors' organizational minutes and of minutes for directors' regular and special meetings and shareholders' annual and special meetings.

Please note that the laws of certain jurisdictions permit incorporators, directors, and shareholders to act by written consent in lieu of meeting.  Some basic suggested forms for this purpose are also included herein.

Please also note that the laws of all United States jurisdictions require special legends to be set forth on share certificates in certain circumstances, such as, for example, multiple classes of shares, restrictions on transferability, etc.  Counsel should accordingly be sure that any required legend is properly set forth on all share certificates prior to their issuance.

11/06/1997  12:33   3026548472

*STATE OF DELAWARE* 02
*SECRETARY OF STATE*
*DIVISION OF CORPORATIONS*
*FILED 09:00 AM 11/06/1997*
*971377453 − 2817554*

## CERTIFICATE OF FORMATION
### OF

### PROUD MARY, LLC

This Certificate of Formation is executed for the purpose of forming a limited liability company pursuant to the Delaware Limited Liability Company Act, 6 Del. C. Sec. 18-101 et seq.

FIRST: The name of the limited liability company is PROUD MARY, LLC

SECOND: The address of its registered office in the state of Delaware is Three Mill Road, Suite 206 in the City of Wilmington, County of New Castle, 19806. The name of its registered agent at such address is The Incorporators, Ltd.

THIRD: The Limited Liability Company shall possess and may exercise all of the powers and privileges granted by the Limited Liability Company Act of the State of Delaware to the extent not limited by any other law or its Limited Liability Company Agreement together with any powers incidental thereto, so far as such powers and privileges are necessary or convenient to the conduct, promotion or attainment of the business, purposes or activities of the Limited Liability Company.

FOURTH: The Company shall have a Board of Managers. The business and affairs of the Company shall be managed by or under the direction of the Board of Managers. No member of the Company, by reason of his, her or its status as such, shall have any right or authority to act for or bind the Company.

FIFTH: The Limited Liability Company shall without restriction indemnify and hold harmless any member or manager from and against any claims and demands of any nature so long as the member or manager acted in good faith and in a manner believed to be in the best interest of the Limited Liability Company and with respect to any criminal action or proceeding, had no reasonable cause to believe the conduct was unlawful.

SIXTH: The Limited Liability Company is to dissolve on the date set forth in the Limited Liability Company agreement.

IN WITNESS WHEREOF, the undersigned has executed this Certificate of Formation of PROUD MARY, LLC this 6TH day of November, 1997.

Matthew D. Esteves - Authorized Person

STATEMENT OF INCORPORATOR
IN LIEU OF ORGANIZATIONAL

PROUD MARY, LLC


The Certificate of Formation of this Limited Liability Company, having been filed in the Office of the Secretary of State, the undersigned, being the sole incorporator named in said certificate, does hereby state that the following actions were taken on this day for the purpose of organizing this Limited Liability Company.

1. A copy of the Certificate of Formation is filed in the Office of the Secretary of State on November 6, 1997 and  recorded in the Office of Recorder of Deeds of the County of New Castle, was appended to this statement.

2. The principal office of the corporation in the State of Delaware was fixed at Three Mill Road, Suite 206, Wilmington, DE 19806-2146.  The name of it's registered agent is The Incorporators Ltd.

3. By-Laws for the regulation of the affairs of this company were adopted by the undersigned authorized person and were ordered inserted in the minute book immediately before this instrument.

4. The Board of Directors is authorized, in its discretion, to issue the shares of the capital stock of this corporation to the full amount or number of shares authorized by the Certificate of Formation, in such amounts and for such consideration as from time to time shall be determined by the Board of Directors and as may be permitted by law.

5. The company is authorized and empowered to conduct any and all business of the corporation without a seal of the corporation as permitted by Section 2 of the By-Laws and 8 Delaware Code Section 122 (3).

6. The following persons are elected as Members to hold office until the first annual meeting of the members or until a qualified successor is elected and qualified:

Mauricio B. Gil

I hereby resign as incorporator after executing the foregoing statement.

Dated:  November 6, 1997

Matthew D. Esteves - Authorized Person

## CERTIFICATION

I, MATTHEW D. ESTEVES, Notary Public for the State of Delaware and County of New Castle, do hereby certify that the above and foregoing is a true and correct copy of the original Certificate of PROUD MARY, LLC as received and filed in the Office of the Secretary of State, the November 6, 1997.

IN WITNESS WHEREOF, I have hereunto set my hand and seal on November 6, 1997.

_____
Notary Public

PROUD MARY, LLC
─────────────────────────────
Name of Company

## LIMITED LIABILITY COMPANY DATA SHEET
as at     NOVEMBER          ,19 97

Date of Organization:   NOVEMBER 6, 1997

State of Organization:   DELAWARE

Principal place of Business:   Three Mill Road Suite 206 Wilmington Delaware 19806

Officers:

| | |
|---|---|
| Mauricio B Gil | Operating Manager |
| Toshihide Nakajima | Secretary |
| Toshihide Nakajima | Treasurer |

Bank Accounts:    AMSOUTH BANK   EIGHTH STREET OFFICE

Fiscal Year:    DECEMBER 31

Annual Meeting Date:   JANUARY 15

| Members | Number of Units |
|---|---|
| Toshihide Nakajima | 65% |
| Mauricio B. Gil | 35% |
| | |
| | |

CD-1

Attorney's Copy

_____
Name of Company

LIMITED LIABILITY COMPANY DATA SHEET
as at                              ,19

Date of Organization:

State of Organization:

Principal place of Business:

Officers:

_____ Operating Manager
_____ Secretary
_____ Treasurer

Bank Accounts:

Fiscal Year:

Annual Meeting Date:

Members                          Number of Units

_____               _____
_____               _____
_____               _____
_____               _____

## LOCATION OF COMPANY OUTFIT

| Retained in office | | Forwarded to Client | Date |
|---|---|---|---|
| ☐ | Minute Book | ☐ | _____ |
| ☐ | Unit Certificate Book | ☐ | _____ |
| ☐ | Unit Ledger | ☐ | _____ |
| ☐ | Seal | ☐ | _____ |

FILE IN OFFICE NOTEBOOK OF COMPANY CLIENTS
AD-1

OPERATING AGREEMENT

OF

PROUD MARY, LLC

## ARTICLE I
## OFFICES

Section 1. <u>Principal Office</u> - The principal office of the Company shall be as set forth in its Articles of Organization.

Section 2. <u>Additional Offices</u> - The Company may have such additional offices at such other place within or without the State of its organization as the Members may from time to time determine or as the business of the Company may require.

## ARTICLE II
## MEETINGS

Section 1. <u>Annual Meeting</u> - An annual meeting of Members shall be held within five (5) months after the close of the fiscal year of the Company on such date and at the time and place (either within or without the State of its organization) as shall be fixed by the Members. At the annual meeting the Members shall elect an Operating Manager and other officers and transact such other business as may properly be brought before the meeting.

Section 2. <u>Special Meeting</u> - A special meeting of Members may be called at any time by the Operating Manager and shall be called by the Operating Manager at the request in writing of a majority of the Members entitled to vote at such meeting. Any such request shall state the purpose or purposes of the proposed meeting. Business transacted at any special meeting of Members shall be confined to the purposes set forth in the notice thereof.

Section 3. <u>Notice of Meetings</u> - Written notice of the time, place and purpose of every meeting of Members (and, if other than an annual meeting, the person or persons at whose discretion the meeting is being called), shall be given by the Operating Manager to each Member of record entitled to vote at such meeting, not less than ten nor more than fifty days prior to the date set for the meeting. Notice shall be given either personally or by mailing said notice by first class mail to each Member at his address appearing on the record book of the Company or at such other address supplied by him in writing to the Operating Manager of the Company for the purpose of receiving notice.

A written waiver of notice setting forth the purposes of the meeting for which notice is waived, signed by the person or persons entitled to such notice, whether before or after the time of the meeting stated therein, shall be deemed equivalent to the giving of such notice. The attendance by a Member at a meeting either in person or by proxy without protesting the lack of notice thereof shall constitute a waiver of notice of such Member.

All notices given with respect to an original meeting shall extend to any and all adjournments thereof and such business as might have been transacted at the original meeting may be transacted at any adjournment thereof; no notice of any adjourned meeting need be given if an announcement of the time and place of the adjourned meeting is made at the original meeting.

Section 4.  Quorum - The holders of a majority in interest of the Members present in person or represented by proxy, shall be requisite and shall constitute a quorum at all meetings of members except as otherwise provided by statute or the Articles of Organization.  A Member's interest in the Company shall be in proportion to his contribution to the capital of the Company adjusted from time to time to reflect additions or withdrawals.  The phrase "a majority in interest of the Members" shall mean Members who, in the aggregate, shall have Capital Contributions in excess of fifty (50%) percent of the total Capital Contributions of all of the Members.  If, however, a quorum shall not be present or represented at any meeting of Members, the Members entitled to vote thereat, present in person or represented by proxy, shall have power to adjourn the meeting from time to time, without notice other than announcement at the meeting, until a quorum shall be present or represented.  At such adjourned meeting at which a quorum shall be present or represented, any business may be transacted which might have been transacted at the meeting as originally notified.  When a quorum is once present to organize a meeting, such quorum is not deemed broken by the subsequent withdrawal of any Members.

Section 5.  Voting - Every Member entitled to vote at any meeting shall be entitled to vote in accordance with his interest in the Company held by him of record on the date fixed as the record date for said meeting and may so vote in person or by proxy.  Any Company action shall be authorized by a majority in interest of the votes cast by the Members entitled to vote thereon except as may otherwise be provided by statute, the Articles of Organization or this Operating Agreement.

Section 6.  Proxies - Every proxy must be signed by the Member entitled to vote or by his duly authorized attorney-in-fact and shall be valid only if filed with the Operating Manager of the Company prior to the commencement of voting on the matter in regard to which said proxy is to be voted.  No proxy shall be valid after the expiration of eleven months from the date of its execution unless otherwise expressly provided in the proxy.  Every proxy shall be revocable at the pleasure of the person executing it except as otherwise provided by statute.  Unless the proxy by its terms provides for a specific revocation date and except as otherwise provided by statute, revocation of a proxy shall not be effective unless and until such revocation is executed in writing by the Member who executed such proxy and the revocation is filed with the Operating Manager of the Company prior to the voting of the proxy.

Section 7.  Members' List - A list of Members as of the record date, certified by the Operating Manager of the Company shall be prepared for every meeting of Members and shall be produced by the Operating Manager thereat.

Section 8.  Inspectors at Meetings - In advance of any Members' meeting, the Members may appoint one or more inspectors to act at the meeting or at any adjournment thereof and if not so appointed the person presiding at any such meeting may, and at the request of any Member entitled to vote thereat shall, appoint one or more inspectors.  Each inspector, before entering upon the discharge of his duties, shall take and sign an oath faithfully to execute the duties of inspector at such meeting with strict impartiality and according to the best of his ability.

Section 9.  Conduct of Meeting - All meetings of Members shall be presided over by the Operating Manager, or if he is not present, by a Member thereby chosen by the Members at the meeting. The Operating Manager or the person presiding at the meeting shall appoint any person present to act as secretary of the meeting.

ARTICLE III
COMMITTEES

The Members, by resolution of a majority in interest of the Members, may designate from among themselves one or more committees, each consisting of three or more Members, and each of which, to the extent provided in such resolution, shall have all the authority of the Members except that no such committee shall have authority as to any of the following matters:

(a) The filing of vacancies in any committee;

(b) The fixing of compensation of the Members for serving on any committee;

(c) The amendment or repeal of this Operating Agreement or the adoption of a new Operating Agreement; and

(d) The amendment or repeal of any resolution of the Members which by its terms shall not be so amendable or repealable.

The Members may designate one or more Members as alternate members of any such committee who may replace any absent member or members at any meeting of such committee.

Each such committee shall serve at the pleasure of the Members.  The Members shall have the power at any time to fill vacancies in, to change the membership of, or to discharge any such committee.  Committees shall keep minutes of their proceedings and shall report the same to the Members at the meeting of the Members next succeeding, and any action by the committee

OP-3

shall be subject to revision and alteration by the Members, provided that no rights of a third party shall be affected in any such revision or alteration.

## ARTICLE IV
## OFFICERS

Section 1. Executive Officers - The officers of the Company shall be an Operating Manager, a Secretary and a Treasurer and such other officers as the Members may determine. Any two or more offices may be held by the same person.

Section 2. Election - The Operating Manager and the other officers shall be chosen by the Members and shall hold office for the term for which elected and until their successors have been elected and qualified. The Members may from time to time appoint all such other officers as they determine and such officers shall hold office from the time of their appointment and qualifications until the time at which their successors are appointed and qualified. A vacancy in any office arising from any cause may be filled for the unexpired portion of the term by the Members.

Section 3. Removal - Any officer may be removed from office by the Members at any time with or without cause.

Section 4. Delegation of Powers - The Members may from time to time delegate the powers or duties of any officer of the Company, in the event of his absence or failure to act otherwise, to any other officer or Member or person whom they may select.

Section 5. Compensation - The compensation of each officer shall be such as the Members may from time to time determine.

Section 6. Operating Manager - The Operating Manager shall be the chief executive officer of the Company and shall have general charge of the business and affairs of the Company, subject, however, to the right of the Members to confer specified powers on officers and subject generally to the direction of the Members.

Unless otherwise ordered by the Members, the Operating Manager, or in the event of his inability to act, an officer designated by the Members, shall have full power and authority on behalf of the Company to attend and to act and to vote at any meeting of security holders of companies in which the Company may hold securities, and at such meetings shall possess and may exercise any and all rights and powers incident to the ownership of such securities, and which, as the owner thereof, the Company might have possessed and exercised, if present. The Members by resolution from time to time may confer like powers upon any other person or persons.

OP-4

Section 7. <u>Secretary</u> - The Secretary shall keep the minutes of all meetings and record all votes of Members and committees in a book to be kept for that purpose. He shall give or cause to be given any required notice of meetings of Members or any committee, and shall be responsible for preparing or obtaining from a transfer agent appointed by the Members, the list of Members required by Article II, Section 7 hereof. He shall be the custodian of the seal of the Company and shall affix or cause to be affixed the seal to any instrument requiring it and attest the same and exercise the powers and perform the duties incident to the office of Secretary subject to the direction of the Members.

Section 8. <u>Treasurer</u> - Subject to the direction of the Members, the Treasurer shall have charge of the general supervision of the funds and securities of the Company and the books of account of the Company and shall exercise the powers and perform the duties incident to the office of the Treasurer. If required by the Members, he shall give the Company a bond in such sum and with such sureties a may be satisfactory to the Members for the faithful discharge of his duties.

Section 9. <u>Other Officers</u> - All other officers, if any, shall have such authority and shall perform such duties as may be specified from time to time by the Members.

ARTICLE V
RESIGNATIONS

Any officer of the Company or any member of any committee of the Members, may resign at any time by giving written notice to the Members, the Operating Manager or the Secretary. Any such resignation shall take effect at the time specified therein or, if the time is not specified therein, upon the receipt thereof, irrespective of whether any such resignations shall have been accepted.

ARTICLE VI
CERTIFICATES REPRESENTING MEMBERSHIP

Section 1. <u>Form of Certificates</u> - Each Member shall be entitled to a certificate or certificates in such form as prescribed by the Members and by any applicable statutes, which Certificate shall certify the interest of the Member in the Company. The Certificates shall be numbered and registered in the order in which they are issued and upon issuance the name in which each Certificate has been issued together with the interest in the Company represented thereby and the date of issuance shall be entered in the Membership book of the Company by the Secretary or by the transfer agent of the Company. Each certificate shall be signed by the Operating Manager and countersigned by the Secretary and shall be sealed with the Company Seal or a facsimile thereof. The signatures of the officers upon a certificate may also be facsimiles if the certificate is countersigned by a transfer agent or registered by a registrar other than the Company itself or an employee of the Company. In case any officer who has signed or whose facsimile signature has been placed upon a certificate shall have ceased to be such officer before the certificate is issued, such certificate may be issued by the Company with the same effect as if the officer had not ceased to be such at the time of its issue.

OP-5

Section 2.  <u>Record Date for Members</u> - For the purpose of determining the Members entitled to notice of, or to vote at any meeting of Members or any adjournment thereof or to express consent or dissent from any proposal without a meeting, or for the purpose of determining the Members entitled to receive payment of any dividend or the allotment of any rights, or for the purpose of any other action, the Members may fix, in advance, a date as the record date for any such determination of Members.  Such date shall not be more than fifty nor less than ten days before the date of any meeting nor more than fifty days prior to any action taken without a meeting, the payment of any dividend or the allotment of any rights, or any other action.  When a determination of Members of record entitled to notice of, or to vote at any meeting of Members has been made as provided in this Section, such determination shall apply to any adjournment thereof, unless the Members fix a new record date under this Section for the adjourned date.

Section 3.  <u>Members of Record</u> - The Company shall be entitled to treat the holder of record of any Membership certificate as the holder in fact thereof and, accordingly, shall not be bound to recognize any equitable or other claim to or interest in such membership interest on the part of any other person whether or not it shall have express or other notice thereof, except as otherwise provided by the laws of the State of its organization.

### ARTICLE VII
### STATUTORY NOTICES

The Members may appoint the Treasurer or any other officer of the Company to cause to be prepared and furnished to members entitled thereto any special financial notice and/or statement which may be required by any applicable statute.

### ARTICLE VIII
### FISCAL YEAR

The fiscal year of the Company shall be fixed by the Members by resolution duly adopted, and, from time to time, by resolution duly adopted the Members may alter such fiscal year.

### ARTICLE IX
### COMPANY SEAL

The Company seal shall have inscribed thereon the name of the Company, the year and state of its creation and the words "A Limited Liability Company" and shall be in such form and contain such other words and/or figures as the Members shall determine.  The Company seal may be used by printing, engraving, lithographing, stamping or otherwise making, placing or affixing, or causing to be printed, engraved, lithographed, stamped or otherwise made, placed or affixed, upon any paper or document, by any process whatsoever, an impression, facsimile or other reproduction of said Company seal.

OP-6

# MINUTES OF FIRST MEETING

## OF

## MEMBERS

## OF

PROUD MARY, LLC

The first meeting of the Members of the above captioned Limited Liability Company was held on the date, time and at the place set forth in the written Waiver of Notice signed by all the Members, fixing such time and place, and prefixed to the minutes of this meeting.

There were present the following:

Toshihide Nakajima
Mauricio Gil
Janine Gil

being all the Members.  The meeting was called to order by _____ it was moved, seconded and unanimously carried, that

Toshihide Nakajima     act as Temporary Chairman, and that

Janine Gil          act as Temporary Secretary.

The meeting then proceeded to the election of managers.  Upon nominations duly made and seconded, the following were elected and qualified:

Operating Manager  :        ~~Mauricio Gil~~

Secretary          :        Janine Gil

Treasurer          :        Toshihide Nakajima

There being no further business to come before the meeting, upon motion duly made, seconded and unanimously carried, it was adjourned.

_____
Secretary

Members:

_____

_____

_____

AM 3

3RD DOCUMENT of Level 1 printed in FULL format.

*** THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY ***

SAN DIEGO COUNTY, CALIFORNIA, FICTITIOUS BUSINESS NAMES

DBA-NAME:  ALOHA SURFBOARDS

OWNER:  PROUD MARY LLC

FILING-DATE:  03/23/1998

DBA NAME ABANDONED:  03/29/2000

ABANDONMENT FILE NUMBER:  2000009523

FILE NUMBER:  1998007837

2ND DOCUMENT of Level 1 printed in FULL format.

*** THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY ***

SAN DIEGO COUNTY, CALIFORNIA, FICTITIOUS BUSINESS NAMES

DBA-NAME:  ALOHA SURFBOARDS

OWNER:  GIL MAURICIO

FILING-DATE:  02/04/2000

FILE NUMBER:  2000003856

4TH DOCUMENT of Level 1 printed in FULL format.

*** THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY ***

SAN DIEGO COUNTY, CALIFORNIA, FICTITIOUS BUSINESS NAMES

DBA-NAME:  ALOHA SURFBOARDS

OWNER:  GILL MAURICIO

FILING-DATE:  03/29/2000

FILE NUMBER:  2000009522



8/111 Old Pittwater Rd. Brookvale, NSW 2100.   Ph.(02) 9939 1831
Fx.(02) 9905 5816
alohaezip.com.au

To Whom It may concern,

This letter is to verify that Proud Mary L.L.C is the holder of the license to distribute clothing in the United States of America, for Aloha Surfboards Pty. Ltd. of 8/111 Old Pittwater Rd. Brookvale NSW 2100 Australia, who is the owner of the word "Aloha" under class 25 and 28

Yours Sincerely

Greg Clough
Managing Director

www.alohasurfboards.com.au

. Case 3:00-cv-01992-IEG-JAH   Document 1   Filed 10/05/00   PageID.39   Page 39 of 71

# AGREEMENT TO
# TRANSFER INTEREST IN LIMITED LIABILITY COMPANY

1.      **PARTIES/INTENT.** The parties to this Agreement are Mauricio Gil (referred to here as "Gil") and Toshihide Nakajima (referred to here as "Nakajima") and Proud Mary, LLC, a Delaware limited liability company (referred to here as "Proud Mary"). Gil and Nakajima are the sole members of Proud Mary. At the present time, Gil and Nakajima desire that Gil withdraw from Proud Mary and resign as an agent, manager and officer of Proud Mary and transfer Gil's interest in Proud Mary to Nakajima.

2.      **TRANSFER OF INTEREST.** This Agreement will serve to transfer all interest that Gil owns in Proud Mary to Nakajima. After the effective date stated below, the records of Proud Mary will reflect that Nakajima as the sole member of Proud Mary.

3.      **EFFECTIVE DATE.** The parties agree that on the date that the last party executes this Agreement, Gil's interest in Proud Mary will transfer to Nakajima ("the effective date"). Gil shall resign as an agent, manager and officer of Proud Mary as of the effective date.

4.      **NOTICE TO THIRD PARTIES.** The parties agreed that Proud Mary shall send notices to the concerned departments and agencies of the State of California, State of Delaware, and the United States Government that Gil is no longer a member of Proud Mary or an agent, manager or officer. The parties will also notify all third parties that do business with Proud Mary that Gil is no longer a member, agent, manager and officer of Proud Mary.

5.      **DISCLOSURE.** Except as appears by the books of Proud Mary, Gil and Nakajima represent that they have not contracted any liability which can or may be charged to Proud Mary or other party, and that neither has received or discharged any of the credits, moneys, or effects of Proud Mary except as shown on the books and records of Proud Mary. Gil represents that he has done nothing to transfer or encumber any of his interest in Proud Mary.



6.      **LIABILITIES/ASSETS.** After the effective date, any liabilities of Proud Mary become the responsibility of Proud Mary or Nakajima in his capacity as the sole member, agent, manager and/or officer of Proud Mary. Gil shall have no responsibility for the payment of any taxes, insurance of any type for Proud Mary or for any liability for any debt of Proud Mary of any type that arises after the effective date. All assets, except as noted below, presently owned by Proud Mary shall remain owned by Proud Mary.



but licence only for clothing (



7.      **ASSIGNMENT OF RIGHTS TO GIL.** As part of the consideration of this Agreement, Proud Mary and Nakajima assign to Gil all rights they have to the use of the name Aloha for the manufacture and sale of surfboards and the use of Aloha surfboard designs as presently manufactured and sold by Proud Mary.



8.      **WAIVER OF SETTLING OF ACCOUNTS/ RELEASE OF CLAIMS.** The parties hereby waive any settling of accounts or right to receive an accounting between themselves

From Eric D Morton To Eleanor Bill          Date: 8/23/99 Time: 14:54:55          Page 3 of 5

The parties also release from one another any and all claims, suits, causes of action, debts, liens, contracts, agreements, promises, liabilities, demands, damages, losses, or costs and expenses, of any nature whatsoever, known or unknown, fixed or contingent, which each party may have against the other party, their attorneys, employees, spouses, agents, directors, managers or officers.

The parties expressly waive the provisions of California Civil Code Section 1542, which provides:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known to him, must have materially affected his settlement with the debtor."

9       TIME OF ESSENCE. Time is hereby expressly declared to be of the essence of this Agreement.

10      BINDING ON HEIRS AND ASSIGNS. This Agreement and each of its provisions shall be binding on the heirs, executors, administrators, successors, successors in interest and assigns of each of the parties hereto.

11      SOLE AND ONLY AGREEMENT. This instrument constitutes the sole and only agreement between the parties. This instrument correctly sets forth the rights, duties and obligations of each party to the other party. Any prior agreements, promises, negotiations, or representations concerning the subject matter of this Agreement not expressly set forth hereinabove are no longer of any force and effect.

12      COUNTERPARTS. This Agreement may be executed in two or more counterparts, each of which shall be an original, but all of which shall constitute one and the same instrument.

13      GOVERNING LAW. This Agreement has been negotiated and entered into in the County of San Diego, State of California, and shall be governed by, construed and enforced in accordance with the internal laws of the State of California, applied to contracts made in California by California domiciliaries to be wholly performed in California.

14      BENEFIT AND BURDEN. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, representatives, successors and assigns.

15      WAIVER AND AMENDMENT. No breach of any provision hereof can be waived unless in writing. Waiver of any one breach of any provision hereof shall not be deemed to be a waiver of any other breach of the same or any other provision hereof. This Agreement may be amended only by a written agreement executed by the parties in interest at the time of the modification.

16      CAPTIONS AND INTERPRETATIONS. Paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend or describe the scope of this Agreement or any provision hereof. No provision in this Agreement is to be

interpreted for or against other party because that party or his legal representative drafted such provision.

17.     **ENTIRE AGREEMENT.** This Agreement constitutes the entire agreement between the parties hereto pertaining to the subject matter hereof, fully supersedes any and all prior understandings, representations, warranties and agreements between the parties hereto or any of them, pertaining to the subject matter hereof. This Agreement may be modified only by written agreement signed by all of the parties hereto.

18.     **SEVERABILITY.** If any provision or any part of any provision of this Agreement shall for any reason be held to be invalid, unenforceable or contrary to public policy or any law, then the remainder of this Agreement shall not be affected thereby and shall remain in full force and effect.

19.     **ATTORNEYS' FEES AND COSTS.** In the event any action or proceeding is brought to enforce this Agreement or arising therefrom, the prevailing party shall be entitled to reasonable attorneys' fees and costs in addition to all other relief for which the party or those parties may be entitled.

20.     **REPRESENTATION OF COUNSEL.** The parties represent that they have consulted with competent legal counsel concerning the terms of this Agreement or have been afforded the opportunity to seek the advice of legal counsel regarding this Agreement and its terms and conditions. Each party further represents that they and their counsel have had an opportunity to make sufficient inquiry as they deem necessary in connection with the subject matter of this instrument prior to its execution.


Dated:

                          Mauricio Gil


Dated

                          Toshihide Nakajima


Dated                     Proud Mary, LLC



                     By
                          Toshihide Nakajima, Manager



                                     3

### Consent of Janine Gil and Resignation as Officer

I, Janine Gil, represent that I am the spouse of Mauricio Gil. I hereby approve of the transfer of Mauricio Gil's interest in Proud Mary, LLC and all of the provisions of this Agreement. I hereby relinquish any rights and interest that I may have in Proud Mary, LLC or to any claim to either Proud Mary, LLC or Toshihide Nakajima.  I represent that I have not have not contracted any liability which can or may be charged to Proud Mary, LLC or other party, and that I have not received or discharged any of the credits, moneys, or effects of Proud Mary, LLC except as shown on the books and records of Proud Mary, LLC.  I also represent that I have done nothing to transfer or encumber any interest in Proud Mary, LLC.  I hereby resign as an officer and agent of Proud Mary, LLC.

Dated:

                                        Janine Gil

-4

ARTURO & WOOD LLP

LAWYERS

3868 CARSON STREET, SUITE 201

TORRANCE, CALIFORNIA  90503

Of Counsel:

E. Eugene Walsh
Scott E. Wood

(310) 316-0162

FACSIMILE: (310) 316-0192

August 25, 1999

Eric D. Morton, Esq.
3156 Vista Way, Ste. 200
Oceanside, CA 92056

Re:  Proud Mary, LLC

Dear Mr. Morton:

This letter is a follow-up of our telephone conversation of this morning regarding the dissolution of Proud Mary, LLC. Again, thank you for your very quick response regarding the proposed Agreement between Mr. Nakajima and Mr. and Mrs. Gil. However, Mr. Nakajima is not in a position to accept the proposed transfer of the Gils interest in Proud Mary and assumption of its obligations given the precarious financial condition of Proud Mary.

Because of the poor financial condition, we believe it would be preferable to proceed with an orderly liquidation of the assets of Proud Mary and the payment of the various liabilities, exclusive of those of the owners.  Only after payment of other creditors would the owners obligations be paid.  Funds taken out of the business by the owners must be returned.  In addition, no further business would be conducted by Proud Mary other than the orderly sale and disposition of its assets.

I indicated to you that a brief review of the outstanding creditors of Proud Mary seems to indicate that Mr. and Mrs. Gil may be using surfboards belonging to Proud Mary for the start of their new business.  Although certain surfboard blanks, glass and epoxy had been provided to Proud Mary for which payment remains outstanding, it appears that the finished surfboards may have been used by the Gils.  It also appears that employee withholdings have not been paid to the proper taxing authorities.

For your information, I am enclosing a copy of the letter which purports to be the "license" for the use of the "Aloha" name by Proud Mary, LLC.  Although the document may have given

Eric D. Morton, Esq.
Page 2
August 25, 1999


Proud Mary the right to sell clothing using the name "Aloha",
there is clearly no reference to surfboards.  As a result, Proud
Mary has no license or ability to sub-license the manufacture and
sale of surfboards by Mr. and Mrs. Gil.

    Unfortunately, Proud Mary was very unsuccessful.  Given the
situation which exists regarding the possible lack of limited
liability company protection, I believe that an orderly
dissolution with the payment of third party obligations will be
the best for all involved.

    After you have had a chance to review the above comments
with your client, please call me with any comments or proposals
for the peaceful separation of the parties.

                          Very truly yours,

                          E. Eugene Walsh

EEW/gkf
cc: Toshihide Nakajima

# Bank of America
## Funds Transfer Request and Authorization

**Section I: Requester / Originator Information**

Name: MAURICIO B. Gil

Telephone Number (Day): 760-7574696   Other:

Address: 420 VIA DEL Monte   City: OCEANSIDE   State: CA   Zip: 92054

Customer Approval: I authorize Bank of America to transfer my funds as set forth in the instructions noted herein (including debiting my account if applicable), and agree that such transfer of funds is subject to the Bank of America standard funds transfer agreement and applicable fees

Customer's Signature: _(signature)_   Date: 11/19/99

**Section II: Transfer Payment Instructions**

Amount of Wire (if US dollars): 1,200.00   Amount of Wire (if foreign currency):

Country/Name of Foreign Currency (e.g. French Francs): AUSTRALIA

Account Number to Debit: 0184814585   Type of Account Debited: ☒ Checking  ☐ Savings

State Where Account was Opened: CALIFORNIA

Title or Name on Debit Account: MAURICIO GIL DBA ALOHA Surf Boards   Repetitive Wire Number (if applicable):

Name of Person or Company Receiving Funds (Beneficiary): ALOHA SURFBOARDS PTY. LTD   Acct # of Person or Company Receiving Funds (Beneficiary Acct #): #110793

Address of Beneficiary (if available): Street | City | State | Country | Zip

Name of Bank Where Beneficiary Has Account (Beneficiary Bank): WESTPAC BANKING CORP.   ID of Beneficiary Bank (e.g. Routing/ABA Number-if available):

Beneficiary Bank Address (if available): Street BROOKVALE   City SYDNEY   State NSW   Country AUSTRALIA

Name of Bank to Send Funds Thru (Send Thru Bank Name-if applicable): | ID of Bank to Send Funds Thru (e.g. SWIFT ID-if available):

Send Thru Bank Address (if available): Street | City | State | Country

Name and Phone # of Person to Contact When Funds Arrive (if applicable): | Any Additional Information for Beneficiary (if applicable):

Any Additional Instructions for Bank Receiving the Funds (if applicable):

**Section III: Wire Acceptance Information**

Customer ID: ☐ DL  ☐ State ID  ☐ Military ID  ☐ Passport  ☒ Other   Source: ☒ OTC  ☐ Phone  ☐ Fax  ☐ Letter
ID Number: KNOWN

Callback Performed (Required For Phone, Fax Or Letter): ☐ Yes  ☐ No

Callback Information: Name Of Person Contacted/Reason No Callback Performed | Date | Time

Purpose Of Wire (Required if OFAC blocked country-see TAO email bulletin board "nw help.block.cntry" for listing of sanctioned countries)

Request Acceptance Information | Date | Time | Associate Name (Print) | Phone # | Mail Code

**Section IV: Balance Approval**

Debit Date | US Dollar Amt 1200 | Foreign Currency Information: (if applicable) | FX Amt | Rate | FX Ref. ID

Available Balance 3940 | Balance Sufficient? ☐ Yes ☐ No | OD Amount | OD Covered By

Internal Debit To: ☐ ICA Serial #  ☐ GL GL# | Source of Funds if Internal Debit

I hereby approve the overdraft for this funds transfer transaction. My approval is in accordance with the "Freedom to Act" guidelines.

OD Authorizing Associate's Name (Please Print) | Authorizing Associates Signature | Date

**Section V: Wire System Entry / Approval**

| | Date | Time | Associate Name | Associate Initials | Phone # | BFT Sequence # |
|---|---|---|---|---|---|---|
| Entry Information | 11-1999 | 3.30 | _(name)_ | _(initials)_ | 7607292238 | 991190029 136 |
| Verify Information | Date | Time | Associate Name | Associate Initials | Phone # | Verify Operator |

* Always route original of this form to National Channel Operations (SC3-250-02-39) when debiting an internal account

White-National Channel Operations (if internal account debited)   Canary-Customer   Pink-Banking Center

05-14-0237B 8-1999

**Law Offices of**
**Samuel P. Britton**
**3868 Carson Street,**
**Suite 201**
**Torrance, CA 90503**

June 14, 2000

Mr. Mauricio Gil
M GIL SHAPES
420 Via Del Monte,
Oceanside, CA 92054

Dear Mr. Gil,

I have recently been retained by my client, Mr. Greg  Clough of Aloha Surfboards.  Mr. Clough has instructed me to inform you that your manufacture and sale of surfboards bearing the "Aloha" name both inside and outside the United States is completely unauthorized and is infringing on my client's trademark rights.

Accordingly, Mr. Clough has instructed me to tell you to immediately stop any further manufacture or sale of surfboards and any related products bearing the "Aloha" name. Further, if this request is not complied with, then I have been instructed to take whatever legal action is necessary to remedy this situation in the most expeditious fashion possible.

Please send a written compliance letter to my law office listed above acknowledging that you have received this notice and that you agree to same by 20 June 2000.  If I do not receive any communication from you by this date, then I have been instructed to initiate legal proceedings against you.  If you wish to discuss this matter with me, then please contact my office as soon as possible at (310) 316-0162.

Yours Very Truly,

Samuel P. Britton
Attorney at Law

TRANSMISSION REPORT

```
TIME        : JUN 20 '00   :58
TEL NUMBER  : +3103160162
NAME        : ARTURO&WOOD/S.WOHN
```

| NBR | FILE | DATE | TIME | DURATION | PGS | TO | DEPT NBR | MODE | STATUS |
|-----|------|------|------|----------|-----|-----|----------|------|--------|
| 773 | F.1 | JUN.20 | 14:58 | 00/51 | 1 | 760 7574620 | | G3 | OK |

Law Offices of
## Samuel P. Britton
Attorney at Law

3868 Carson Street
Suite 201
Torrance
California 90503

Telephone: (310) 316 - 0162

Facsimile: (310) 316 - 0192

September 8, 2000

Mr. Eric D. Morton, Esq.
Law Offices of Eric D. Morton
3156 Vista Way, Ste. #200
Oceanside, CA 92056
Tel: (760) 722-6582
Fax: (760) 722-6588

     Re:    Second Cease and Desist Letter

Dear Mr. Morton,

Further to your letter dated 6 September 2000, I would like to respond to each of your points as follows:

1.    I have reviewed the supposed exclusive license agreement between my client and Mr. Gil, but I have found it to be conspicuously missing a date on the first page and a signature page. My client always executes agreements in the same manner and the absence of a date and the signature page is a clear indication that no such agreement ever existed with my client. I have also reviewed this document with my client and we are under the impression that it looks like one used in connection with my client's European distributors, but not with Mr. Gil or M Gil Shapes. Accordingly, our position remains that there never was an exclusive licensing agreement between my client and your client for any products bearing the "Aloha" trademark whether it be for surfboards or clothing.

Next, evening assuming hypothetically that the document provided with your facsimile letter dated 6 September 2000 is a valid executed license agreement with my client, then your client still has the following problems:

    A.  The hypothetical licensing agreement is only for specific clothing set forth in Schedule C and not for surfboards.
    B.  It is my client's position that your client has breached Clause 12.
    C.  Clause 15 mandates that your client cease using my client's trademark upon the cancellation of this hypothetical agreement.
    D.  In accordance with Clause 16, please provide evidence that Mr. Gil was registered as a permitted user of the "Aloha" trademark. Our position is that no such registration ever took place.
    E.  Please provide us with evidence that your client has complied with Clauses 23 & 24. Our position is that no compliance was ever made putting your client in breach of this hypothetical agreement.
    F.  Please explain how your client is not in breach of Clause 27.

September 12, 2000

    G.  Please demonstrate how your client has not breached this provision as well.

    H.  As per Clause 31, please prove that your client is not in breach by providing a copy of Mr. Gil's products liability insurance policy (with contact particulars) for the last four years naming Aloha Surfboards Pty. Ltd. as an insured party.

    I.  Please prove how your client is not in breach of Clause 32.

    J.  Please explain how your client is not in breach of Clause 33 (a) and (b).

    K.  Also in accordance with Clause 33 and Clause 36, please provide a copy of every sales receipt or invoice for products sold bearing the "Aloha" name which your client has ever made. Please also provide proof that federal and state sales taxes were paid on these transactions.

    L.  In accordance with Clause 37, please send us copies of your client's accounts and records for my client to audit.

    M.  Please explain how your client is not in breach of Clause 38.

    N.  Please be advised that in the event that this hypothetical agreement has any validity at all, then in accordance with Clause 40 my client is hereby providing written notice that this hypothetical agreement with no date and no signature supposedly between Beach Legal Pty. Ltd. and M. Gil Shapes & Designs was hereby terminated based on the happening of one or more of the events in Clause 40 (a) to (i) and various other breaches listed above.

    O.  Counsel may also wish to refer to Clause 41 and Clauses 49 and 50 the latter requiring that any modification, including the inclusion of surfboards, be in writing.

2.      It regards to points discussed in your second numbered paragraph, we are aware of the business dealings between your client and my clients, but it should be made absolutely clear that such business dealings never at any point in time constituted an exclusive licensing agreement for the manufacture and sale of surfboards. In regards to Mat Express shipping, we have notified this company several times regarding the proper address for shipments and any mistakes made regarding place of delivery or contact particulars were not made by my clients.

3.      In responding to your third numbered paragraph, it is again our position that at no time did your client have an exclusive or any type of licensing agreement with my client for the manufacture and sale of surfboards. Further Mr. Gil was notified on 14 June 2000 by my client to "Cease and Desist" any further manufacture or sale of surfboards bearing the "Aloha" trademark. It is our understanding that your client has not complied with this order. Your client is free of course to create his own surfboard design and call same "M Gil Shapes" or whatever he wants with the surfboard blanks he has in stock, but your client does not have permission to manufacture, market and sell surfboards bearing my client's trademark.

In regards to the advertisements on my client's web site, any mention of Mr. Gil was quickly taken off once Mr. Clough, who has been out of the office quite frequently, was made aware of same. Please also note that the accidental posting of your client's particulars on my client's web site in mid July for a few days was also initially unknown by Mr. Clough and was removed as soon as he became of aware of this

mistake.  It should also be pointed out that Marty, who we understand is a good friend of your client, is not authorized to make decisions on behalf of Aloha Surfboards Pty. Ltd. of a business nature and was not initially notified by Mr. Clough of the current situation with your client.  In any event it appears that your client is monitoring my client's web site every day and the retraction of Mr. Gil's particulars from my client's web site should have given your client sufficient notice.

In conclusion, Aloha Surfboards Pty. Ltd. has given your client two warnings, this being the second, to immediately stop any further use of the "Aloha" trademark in the manufacture and sale of surfboards.  Unfortunately, your client has not heeded our order.  Accordingly and given the tone of your letter, we have no other alternative but to proceed to court.

Yours very truly,

Samuel P. Britton

TRANSMISSION REPORT

```
                              TIME        : SEP 13 '00   :55
                              TEL NUMBER  : +3103160162
                              NAME        : ARTURO&WOOD/S.WOHN
```

| NBR | FILE | DATE   | TIME  | DURATION | PGS | TO           | DEPT NBR | MODE | STATUS |
|-----|------|--------|-------|----------|-----|--------------|----------|------|--------|
| 372 | F.6  | SEP.13 | 11:53 | 01 13    | 3   | 917604394907 |          | EC   | OK     |

**Thank you for your request. Here are the latest results from the TARR web server.**

**Serial Number:** 73808523

**Registration Number:** 1580264

**Mark**



**(words only):** ALOHA

**Current Status:** This registration has been renewed.

**Date of Status:** 2000-08-24

**Filing Date:** 1989-06-23

**Registration Date:** 1990-01-30

**Law Office Assigned:** TMEO Law Office # 1

### CURRENT APPLICANT(S)/OWNER(S)

1. ALOHA SURFBOARDS PTY. LTD.

### GOODS AND/OR SERVICES

SURFBOARDS

### PROSECUTION HISTORY

2000-08-24 - Registration renewed - 10 year

2000-08-24 - Registered - Section 8 (10-year) accepted/ Section 9 granted

1999-12-27 - Registered - Combined Section 8 (10-year)/Section 9 filed

1996-09-19 - Registered - Section 8 (6-year) accepted & Section 15 acknowledged

1996-08-05 - Response received for Post Registration action

1996-07-08 - Post Registration action mailed Section 8 & 15

1996-01-03 - Registered - Section 8 (6-year) & Section 15 filed

1990-01-30 - Registered - Principal Register

1989-11-07 - Published for opposition

1989-10-07 - Notice of publication

1989-08-01 - Approved for Pub - Principal Register (Initial exam)

## CONTACT INFORMATION

**Attorney of Record:** FRANCIE R. GOROWITZ

**Address:**
FRANCIE R GOROWITZ
LADAS & PARRY
5670 WILSHIRE BLVD STE 2100
LOS ANGELES CA 90036
US

**Thank you for your request. Here are the latest results from the TARR web server.**

**Serial Number:** 73804138

**Registration Number:** 1576581

**Mark (words only):** ALOHA

**Current Status:** This registration has been renewed.

**Date of Status:** 2000-07-28

**Filing Date:** 1989-06-01

**Registration Date:** 1990-01-09

**Law Office Assigned:** TMEO Law Office # 1

## CURRENT APPLICANT(S)/OWNER(S)

1. ALOHA SURFBOARDS PTY. LTD.

## GOODS AND/OR SERVICES

SURFBOARDS

## PROSECUTION HISTORY

2000-07-28 - Registration renewed - 10 year

2000-07-28 - Registered - Section 8 (10-year) accepted/ Section 9 granted

1999-12-27 - Registered - Combined Section 8 (10-year)/Section 9 filed

1996-09-27 - Registered - Section 8 (6-year) accepted & Section 15 acknowledged

1996-09-03 - Response received for Post Registration action

1996-07-08 - Post Registration action mailed Section 8 & 15

1996-01-03 - Registered - Section 8 (6-year) & Section 15 filed

1990-01-09 - Registered - Principal Register

1989-10-17 - Published for opposition

1989-09-16 - Notice of publication

1989-08-01 - Approved for Pub - Principal Register (Initial exam)

1989-06-23 - Response to office action

## CONTACT INFORMATION

**Attorney of Record:** FRANCIE R. GOROWITZ

**Address:**
FRANCIE R GOROWITZ

Case 3:00-cv-01992-IEG-JAH   Document 1   Filed 10/05/00   PageID.60   Page 60 of 71

LADAS & PARRY
5670 WILSHIRE BLVD STE 2100
LOS ANGELES CA 90036
US

**Thank you for your request. Here are the latest results from the TARR web server.**

**Serial Number:** 73768060

**Registration Number:** 1635547

**Mark**



**(words only):** ALOHA

**Current Status:** Section 8 and 15 affidavits have been accepted and acknowledged.

**Date of Status:** 1997-03-08

**Filing Date:** 1988-12-08

**Registration Date:** 1991-02-19

**Law Office Assigned:** TMEO Law Office # 5

### CURRENT APPLICANT(S)/OWNER(S)

1. ALOHA SURFBOARDS PTY. LTD.

### GOODS AND/OR SERVICES

T-SHIRTS, SWEATPANTS, SWEATSHIRTS, SWEATJACKETS AND SWEATSHORTS

### PROSECUTION HISTORY

1997-03-08 - REGISTERED - SEC. 8 (6-YR) ACCEPTED & SEC. 15 ACK.

1997-02-05 - REGISTERED - SEC. 8 (6-YR) & SEC. 15 FILED

1991-02-19 - REGISTERED-PRINCIPAL REGISTER

1990-11-27 - PUBLISHED FOR OPPOSITION

1990-10-27 - NOTICE OF PUBLICATION

1990-09-21 - APPROVED FOR PUB - PRINCIPAL REGISTER

1990-09-18 - COMMUNICATION RECEIVED FROM APPLICANT

1990-09-18 - EXAMINERS AMENDMENT MAILED

1990-08-20 - COMMUNICATION RECEIVED FROM APPLICANT

1990-07-12 - LETTER OF SUSPENSION MAILED

1990-01-08 - LETTER OF SUSPENSION MAILED

1989-12-26 - PETITION TO REVIVE-GRANTED

1989-10-02 - PETITION TO REVIVE-RECEIVED

1989-09-27 - ABANDONMENT - FAILURE TO RESPOND

1989-03-03 - NON-FINAL ACTION MAILED

## CONTACT INFORMATION

**Attorney of Record:** RICHARD P. BERG

**Address:**
RICHARD P BERG
LADAS & PARRY
5670 WILSHIRE BLVD STE 2100
LOS ANGELES CA 90036
US

**Thank you for your request. Here are the latest results from the TARR web server.**

**Serial Number:** 73707178

**Registration Number:** 1569907

**Mark**



**(words only):** ALOHA

**Current Status:** This registration has been renewed.

**Date of Status:** 2000-02-03

**Filing Date:** 1988-01-25

**Registration Date:** 1989-12-05

**Law Office Assigned:** TMEO Law Office # 1

**CURRENT APPLICANT(S)/OWNER(S)**

1. ALOHA SURFBOARDS PTY. LTD.

**GOODS AND/OR SERVICES**

SPORTING GOODS -NAMELY SURFBOARDS, WAVEBOARDS, SNOWBOARDS, SPORT LEASHES, COVERS AND BAGS FOR THE AFOREMENTIONED SPORTING GOODS, SURFBOARD WAX

**PROSECUTION HISTORY**

2000-02-03 - REGISTERED AND RENEWED (FIRST RENEWAL - 10 YRS)

2000-02-03 - REGISTERED - SEC. 9 GRANTED/CHECK RECORD FOR SEC. 8

1999-10-28 - REGISTERED - COMBINED SECTION 8 (10-YR) & SEC. 9 FILED

1996-05-14 - REGISTERED - SEC. 8 (6-YR) ACCEPTED & SEC. 15 ACK.

1995-10-02 - REGISTERED - SEC. 8 (6-YR) & SEC. 15 FILED

1989-12-05 - REGISTERED-PRINCIPAL REGISTER

1989-09-12 - PUBLISHED FOR OPPOSITION

1989-09-12 - PUBLISHED FOR OPPOSITION

1989-08-12 - NOTICE OF PUBLICATION

1989-06-22 - PETITION TO COMMISSIONER GRANTED

1988-01-03 - PETITION TO COMMISSIONER RECEIVED

1988-11-22 - PUBLISHED FOR OPPOSITION

1988-10-22 - NOTICE OF PUBLICATION

1988-08-09 - APPROVED FOR PUB - PRINCIPAL REGISTER

1988-07-14 - COMMUNICATION RECEIVED FROM APPLICANT

1988-05-06 - NON-FINAL ACTION MAILED

1988-03-24 - ASSIGNED TO EXAMINER

## CONTACT INFORMATION

**Attorney of Record:** FRANCIE R. GOROWITZ

**Address:**
FRANCIE R. GOROWITZ
LADAS & PARRY
5670 WILSHIRE BLVD STE 2100
LOS ANGELES CA 90036-5690
US

**Thank you for your request. Here are the latest results from the TARR web server.**

**Serial Number:** 73806141

**Registration Number:** 1635581

**Mark**



**(words only):** A AUSTRALIA

**Current Status:** Section 8 and 15 affidavits have been accepted and acknowledged.

**Date of Status:** 1997-03-18

**Filing Date:** 1989-06-12

**Registration Date:** 1991-02-19

**Law Office Assigned:** TMEO Law Office # 1

### CURRENT APPLICANT(S)/OWNER(S)

1. ALOHA SURFBOARDS PTY LTD

### GOODS AND/OR SERVICES

SURFBOARDS

### PROSECUTION HISTORY

1997-03-18 - REGISTERED - SEC. 8 (6-YR) ACCEPTED & SEC. 15 ACK.

1997-02-19 - REGISTERED - SEC. 8 (6-YR) & SEC. 15 FILED

1991-02-19 - REGISTERED-PRINCIPAL REGISTER

1990-07-10 - PUBLISHED FOR OPPOSITION

1990-06-09 - NOTICE OF PUBLICATION

1990-04-25 - APPROVED FOR PUB - PRINCIPAL REGISTER

1990-03-30 - COMMUNICATION RECEIVED FROM APPLICANT

1990-03-30 - FINAL REFUSAL MAILED

1990-03-05 - COMMUNICATION RECEIVED FROM APPLICANT

1989-08-31 - NON-FINAL ACTION MAILED

LADAS & PARRY
5670 WILSHIRE BLVD STE 2100
LOS ANGELES CA 90036
US

**Thank you for your request. Here are the latest results from the TARR web server.**

**Serial Number:** 73804138

**Registration Number:** 1576581

**Mark (words only):** ALOHA

**Current Status:** This registration has been renewed.

**Date of Status:** 2000-07-28

**Filing Date:** 1989-06-01

**Registration Date:** 1990-01-09

**Law Office Assigned:** TMEO Law Office # 1

### CURRENT APPLICANT(S)/OWNER(S)

1. ALOHA SURFBOARDS PTY. LTD.

### GOODS AND/OR SERVICES

SURFBOARDS

### PROSECUTION HISTORY

2000-07-28 - Registration renewed - 10 year

2000-07-28 - Registered - Section 8 (10-year) accepted/ Section 9 granted

1999-12-27 - Registered - Combined Section 8 (10-year)/Section 9 filed

1996-09-27 - Registered - Section 8 (6-year) accepted & Section 15 acknowledged

1996-09-03 - Response received for Post Registration action

1996-07-08 - Post Registration action mailed Section 8 & 15

1996-01-03 - Registered - Section 8 (6-year) & Section 15 filed

1990-01-09 - Registered - Principal Register

1989-10-17 - Published for opposition

1989-09-16 - Notice of publication

1989-08-01 - Approved for Pub - Principal Register (Initial exam)

1989-06-23 - Response to office action

### CONTACT INFORMATION

**Attorney of Record:** FRANCIE R. GOROWITZ

**Address:**
FRANCIE R GOROWITZ

1989-08-02 - ASSIGNED TO EXAMINER

## CONTACT INFORMATION

**Attorney of Record:** LINDA L. BERKOWITZ

**Address:**
LINDA L. BERKOWITZ
Ladas & Parry
26 West 61st Street
NEW YORK, NY 10023
US

AO 120 (3/85)

| TO:<br>**Commissioner of Patents and Trademarks**<br>**Washington, D.C. 20231** | **REPORT ON THE**<br>**FILING OR DETERMINATION OF AN**<br>**ACTION REGARDING A PATENT** |
|---|---|

In compliance with the Act of July 19, 1952 (66 Stat. 814; 35 U.S.C. 290) you are hereby advised
that a court action has been filed on the following patent(s) in the U.S. District Court:

| DOCKET NO.<br>00cv1992IEG(JAH) | DATE FILED<br>10/05/2000 | U.S. DISTRICT COURT<br>United States District Court, Southern District of California |
|---|---|---|
| PLAINTIFF<br><br>Aloha Surfboards Pty Ltd. | | DEFENDANT<br><br>M Gil Shapes; Mauricio B. Gil |

| PATENT NO. | DATE OF PATENT | PATENTEE |
|---|---|---|
| 1 1580264 | 06/23/1989 | Aloha Surfboards Pty Ltd |
| 2 1576581 | 01/09/1990 | Aloha Surfboards Pty Ltd |
| 3 1635547 | 02/19/1991 | Aloha Surfboards Pty Ltd |
| 4 1569907 | 12/05/1989 | Aloha Surfboards Pty Ltd |
| 5 1635581 | 02/19/1991 | Aloha Surfboards Pty Ltd |

In the above-entitled case, the following patent(s) have been included:

| DATE INCLUDED | INCLUDED BY<br>☐ Amendment    ☐ Answer    ☐ Cross Bill    ☐ Other Pleading | | |
|---|---|---|---|
| PATENT NO. | DATE OF PATENT | PATENTEE | |
| 1 | | | |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 5 | | | |

In the above-entitled case, the following decision has been rendered or judgment issued:

| DECISION/JUDGMENT |
|---|
| |

| CLERK | (BY) DEPUTY CLERK | DATE |
|---|---|---|
| | | |

Copy 1 - Upon initiation of action, mail this copy to Commissioner   Copy 3 - Upon termination of action, mail this copy to Commissioner
Copy 2 - Upon filing document adding patent(s), mail this copy to Commissioner   Copy 4 - Case file copy

JS44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Aloha Surfboards Pty Ltd. | M Gil Shapes  '00 OCT -5 PH 1:56<br>Gil, Mauricio P. |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED  Australia<br>PLAINTIFF<br>(EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  San Diego County<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND<br>INVOLVED<br>**'00 CV 1992IEG (JAH)** |
|---|---|

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Law Offices of Samuel P. Britton<br>3868 Carson Street, Suite 201<br>Torrance, CA 90503 /  (310) 316-0162<br>Samuel P. Britton | Law Offices of Eric D. Morton<br>3156 Vista Way, Suite 200<br>Oceanside, CA 92056 /  (760) 722-6582<br>Eric D. Morton |

**II. BASIS OF JURISDICTION (PLACE AN x 1 ONE BOX ONLY)**

- 1 U.S. Government Plaintiff
- X 3 Federal Question (U.S. Government Not a Party)
- 2 U.S. Government Defendant
- 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX**
**(For Diversity Cases Only)**   **FOR PLAINTIFF AND ONE BOX FOR DEFENDANT**

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | X 1 | 1 | Incorporated or Principal Place of Business in This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business in Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

**IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)**  Federal Trademark Act (15 U.S.C. 1051-1127) for Federal Trademark Infringement; (15 U.S.C. 1125(a) for Federal Unfair Competition; (15 U.S.C. 1125(c) for Federal Anti-Dilution Violation

**V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)**

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | 610 Agriculture | 422 Appeal 28 USC 158 | 400 State Reapportionment |
| 120 Marine | 410 Airplane | 362 Personal Injury-Medical Malpractice | 620 Other Food & Drug | 423 Withdrawal 28 USC 157 | 410 Antitrust |
| 130 Miller Act | 315 Airplane Product Liability | 365 Personal Injury - Product Liability | 625 Drug Related Seizure of Property 21 USC 881 | **PROPERTY RIGHTS** | 430 Banks and Banking |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | | | 820 Copyrights | 450 Commerce/ICC Rates/etc |
| 150 Recovery of Overpayment & Enforcement of Judgment | 330 Federal Employers' Liability | 368 Asbestos Personal Injury Product Liability | 630 Liquor Laws | 830 Patent | 460 Deportation |
| 151 Medicare Act | 340 Marine | **PERSONAL PROPERTY** | 640 RR & Truck | 840 Trademark | 470 Racketeer Influenced and Corrupt Organizations |
| 152 Recovery of Defaulted Student Loans (Excl. Veterans) | 345 Marine Product Liability | 370 Other Fraud | 650 Airline Regs | **SOCIAL SECURITY** | 810 Selective Service |
| | | | 660 Occupational Safety/Health | 861 HIA (1395ff) | 850 Securities/Commodities Exchange |
| 153 Recovery of Overpayment of Veteran's Benefits | 350 Motor Vehicle | 371 Truth in Lending | 690 Other | 862 Black Lung (923) | |
| 160 Stockholders Suits | 355 Motor Vehicle Product Liability | 380 Other Personal Property Damage | **LABOR** | 863 DIWC/DIWW (405(g)) | 875 Customer Challenge 12 USC 3410 |
| 190 Other Contract | 360 Other Personal Injury | 385 Property Damage Product Liability | 710 Fair Labor Standards Act | 864 SSID Title XVI | 891 Agricultural Acts |
| 195 Contract Product Liability | | | 720 Labor/Mgmt. Relations | 865 RSI (405(g)) | 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | 730 Labor/Mgmt. Reporting & Disclosure Act | **FEDERAL TAX SUITS** | 893 Environmental Matters |
| 210 Land Condemnation | 441 Voting | 510 Motions to Vacate Sentence Habeas Corpus | 740 Railway Labor Act | 870 Taxes (U.S. Plaintiff or Defendant) | 894 Energy Allocation Act |
| 220 Foreclosure | 442 Employment | | 790 Other Labor Litigation | 871 IRS - Third Party 26 USC 7609 | 895 Freedom of Information Act |
| 230 Rent Lease & Ejectment | 443 Housing/Accommodations | 530 General | 791 Empl. Ret. Inc. Security Act | | 900 Appeal of Fee Determination Under Equal Access to Justice |
| 240 Tort to Land | 444 Welfare | 535 Death Penalty | | | 950 Constitutionality of State |
| 245 Tort Product Liability | 440 Other Civil Rights | 540 Mandamus & Other | | | 890 Other Statutory Actions |
| 290 All Other Real Property | | 550 Civil Rights | | | |
| | | 555 Prisoner Conditions | | | |

**VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)**

- X 1 Original Proceeding
- 2 Removal from State Court
- 3 Remanded from Appellate Court
- 4 Reinstated or Reopened
- 5 Transferred from another district (specify)
- 6 Multidistrict Litigation
- 7 Appeal to District Judge from Magistrate Judgment

| VII. REQUESTED IN COMPLAINT: | CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23 | DEMAND $  Preliminary Injunction | Check YES only if demanded in complaint<br>JURY DEMAND: YES   **NO** X |
|---|---|---|---|

**VIII. RELATED CASE(S) IF ANY (See Instructions):**   JUDGE ____   Docket Number ____

DATE:  20 September 2000   SIGNATURE OF ATTORNEY OF RECORD  *Samuel P. Britton*

::ODMA\PCDOCS\WORDPERFECT\228161\1 January 24, 2000 (3:10pm)

#06465 $150.00